There are endorsements in the policy for Illinois. At the end of the policy, you have to go back there, you read the whole thing, and then you go to the Illinois Enforcement Committee. So this is a creation of the Farmers Insurance Company, and that's the reason why we have to go through it this way. So in response, I would ask the Court to reconsider the ambiguity arguments that I've made and enter a fine in favor of the help. Thank you, Counsel. We appreciate the briefs and arguments. The counsel case will be taken under advisory. The next case called Foral Argument is in the interest of S.Y. Counsel. Thank you. May it please the Court and the Counsel, my name is Ryan Kibbley, and I am the court-appointed attorney for the farm's mother, Shirley Y., in this appeal for the dispositional order out of the Circuit Court of Jasper County. In this case, the Circuit Court of Jasper County erred and abused its discretion when it first found my client unable to care for the minor child at the time of the dispositional hearing, and when the trial court also erred and abused its discretion when it then placed custody of the minor child with the respondent father, Stephen P., and continued guardianship with the Department of Children and Family Services. Essentially, in this case, Your Honors, the Circuit Court of Jasper County erred and abused its discretion because at the time of the dispositional hearing in October of last year, the respondent mother had taken the necessary corrective steps to alleviate the problems that caused the petition for adjudication of work shift to be filed in the first place. And because she had taken those corrective steps, she should have been found able to care for the minor child. And then second, because the respondent mother had been the primary caregiver for most of the child's 12 years, it would have been in the best interest of the minor child to have her custody replaced with the respondent mother. Now, before I get into the substance of that argument, I first feel it's important to address the motion to dismiss the appeal that was filed by the state. I know the state's filed their motion. I filed a response. There's been no ruling yet from this court on that motion to dismiss. To briefly sum that up, Your Honor, the state's basing the motion to dismiss the appeal for two reasons. First, the state is saying that the motion or the appellate brief was not timely filed. Essentially, the state is saying that in the appellate brief filed by the respondent mother, the respondent mother based the jurisdiction in the actual brief on 306 and the old 306A procedural rule when it comes to minor children. However, so essentially the state is saying that look, since the respondent mother said in the jurisdictional statement that this was brought up to 306, the mother should have had the argument placed on file within five days. However, that argument should not be allowed to stand. Essentially, Your Honors, when I drafted the brief on behalf of the respondent mother, I inadvertently, because of the confusion with the actual numbering, I said that the respondent mother's brief was brought under 306 and 306A. However, in the civil docketing statement, I indicated this was brought under 301 and 303. Essentially, counsel for the respondent mother misstated jurisdiction. And so therefore, Your Honor, the state's motion to dismiss appeal should be denied. We've taken the motion with the case and will consider your argument. Very good, Your Honor. Thank you. And the second basis for the motion to dismiss was based on the fact that this was not a final appealable order. However, in the response I filed, I cited case of the law that indicates that dispositional orders are final and appealable. Getting back to the merits of the case, Your Honor, the circuit court of Jasper County abused its discretion when it determined that the respondent mother, Shirley Y., was not able to care for the minor child at the time of the dispositional order. The circuit court found that the mother had continuing problems with the prescription medication that she had been prescribed. However, Your Honors, the circuit court's decision was just completely wrong. The testimony from the respondent mother essentially was that the dispositional order occurred on October 27, 2009. The testimony from the respondent mother was she had not had any major adverse reactions and problems with the prescription medication since November of the previous year. So based off the respondent mother's testimony, it can be shown that the respondent mother had not had any additional problems or major problems for a 10-month period. So at the time the dispositional order was entered in October, it is clear that the mother was no longer a threat or posed any harm to the minor child. Further, in that 10-month window from when she had that overdose in November of 2008 up until October 27 of 2009 at the time of the dispositional hearing, the mother had undergone drug treatment counseling as recommended by the service plan. Further, Your Honor, in that 10-month window, the respondent mother's medical issues were not as significant. She didn't have as much back pain. So in other words, she was not taking as many medications by October 27 of 2009 versus when the State and the Department first got involved in the case. So essentially, Your Honor, by the time of that October 27, 2009 dispositional order, the mother had taken the corrective steps to alleviate the issues of prescription medication. She had not had any additional major problems with the prescription medication. Therefore, by October 27, the respondent mother was in a position to properly care for the child. So therefore, the manifest way to the evidence shows that the circuit court should have found the respondent mother able and willing and fit to care for the minor child. It's important to note that when we're at a dispositional stage, it's not about punishing the mother. It's not like a sentencing. It's the court had adjudicated the mother. They moved on to the dispositional stage. And at that point in time, the court has to look to see, look, is the mother able? Is the parent able to now take care of the child? And based off the testimony of that hearing of October the 27th, it is clear that the respondent mother was able and willing to care for the minor child. Therefore, the circuit court erred and abused its discretion when it determined that the mother was not able and fit to care for the minor child. Next, Your Honor, had the court properly found that the respondent mother, surely why, was fit and able to care for the minor child, it would have had to have moved to essentially a best interest standard to determine where custody and guardianship of the minor child should have been placed. However, because the court found her unable and fit, the court never really got into a real substance of why it decided to place the minor child with the respondent father, Stephen P. However, had the court sat down and considered whether the respondent mother should have received custody of the minor child, it is clear that the court would have found it in the minor child's best interest for custody to be placed with the respondent mother, surely why. The record shows that at the time of the dispositional hearing, the minor child was 12. For pretty much the minor child's entire life, she had resided with the respondent mother. It's also clear from the record that for several years of the minor child's life, she had not had much of a relationship with the respondent father, Stephen P. And for those basic reasons, Your Honor, that you have a minor child who spent 12 years with the respondent mother versus not having as much contact or as much of a relationship with the respondent father, it is clear that it would have been in the minor child's best interest for her to go back and live with her mother. Therefore, Your Honor, we feel that, or therefore, Your Honor, the circuit court of Jasper County did err when it decided to place custody with the respondent father, Stephen P. Had the court properly considered the respondent mother, it would have undoubtedly have found it to be in the best interest of the minor child for her custody to be placed with the respondent mother, surely why. For those reasons, Your Honor, the respondent mother respectfully asks that you reverse the decision of the circuit court of Jasper County in place and send it back to the circuit court so that the court can determine whether it is in the best interest of the minor child for her custody to be with the respondent mother. Thank you. Thank you, Counsel. Counsel? May it please the Court. Counsel. First of all, to address the mentioning of our motion to dismiss and the motion to supplement the record filed by the State, the motion to dismiss, I understand you'll take up with the case. I'd just like to ask that the Court keep in mind that just because it's called a dispositional order does not necessarily mean it's a final and appealable order. The nature of the order must be considered, and in this case there was no permanency goal set. There was a permanency hearing scheduled already for March 2nd, which since has taken place. And as the motion to supplement the record shows, that at that permanency hearing, respondent was given one of the alternatives she requested. She received unsupervised visitations, which was an alternative request when she asked for custody to be placed with her. She never objected to DCFS retaining guardianship. She was okay with that. She simply wanted the custody of the daughter and said in the alternative, well, can I at least have unsupervised visitation if her father has her? Since this appeal has been filed, that has happened. That is exactly what she has now. So I believe a mootness question also has arisen since then, and I'd like you to consider those motions. But getting to the substance of the actual grief, I don't think there's any way we can find that the trial court has abused discretion if you look at the record. I don't think any reasonable person could. I mean, respondent argues that the trial court erred in finding that respondent was unable to care for her child and placing custody with the father who was found to be fit. Now, regardless of the outcomes of those motions, like I said, the record will support affirming this trial court's ruling, because the court was defined by preponderance of the evidence. That was the standard, that the respondent was unable to care for SY, the minor child, who was 12 years old, maybe 13 by now. I can't remember her birth date for sure. Now, first, respondent stipulated to the facts that were the basis for finding her unable to care for her child. I mean, she actually stated, or in the adjudication for a petition of courtship, she agreed that she chronically abused prescription drugs. Chronically, not once. Chronically. She stipulated to that. And it goes against everything she testified to at this hearing. Now, respondent's own adult daughter has testified against her. Rikki Burke recalled receiving a phone call on November 22nd, this is one of her daughters, from a very scared SY, the minor involved in this case, saying that she couldn't get her mom to wake up, she couldn't get her to move. So Rikki went over to the house, saw her mom on the couch, looked like she was dead, called her other sister Angie. Angie came over, called 911, someone which maybe should have been done earlier, but also thought that she looked like she was dead, called 911. I think the fact that they didn't call 911 immediately also goes to show that this wasn't an odd occurrence. They wanted to see, okay, is it really bad or just kind of bad? And they decided this time it was kind of bad. They saw prescription bottles laying around. The mother actually looked like she was dead. Now, Angie Shook, who's also the daughter to care for respondent, two days previous to this incident, when she had her surgery, and she reported that she had to go pick up a prescription percocet from the doctor's office because the first pain pill wasn't strong enough. So respondent's testimony that she thought that the pain pill was just too strong and was prescribed to her, well, she asked for a stronger prescription. Now, also, Angie Shook reported that when she arrived at her home for an August visit, in case you're not familiar with this, the adult daughters were actually the supervisors of these visitations. That was court-ordered before they became unsupervised. So between July and October, before this dispositional hearing, they were supervising these visits. So this was real close to the time that the trial court made its ruling. They testified to incidents. Angie Shook reported that in this August visit, respondent arrived at her house, and as soon as she got out of the door of her car, she knew something was wrong. She could barely stand. She was blurring her speech. Then immediately she says, well, I've got to go back home. I forgot my purse. So she leaves. She's gone for two and a half hours, and the best part of this, the worst part of it, I should say, is as she's leaving, she leaves the driver's door open, hanging open. That's how messed up she is, is hanging open as she backs out of her driveway. Now, she comes back two and a half hours later in the same condition. Her and the minor child kind of get into it. She's real upset, crying. Why? I don't want to see you like this, Mom. Okay? Now, after that incident, Angie, this daughter, actually declined to supervise any further visits because it was so conflicting for her own family and for XY. Now, Gigi, another daughter, reported that the first visit actually went well, that she supervised, but the second and third did not go well. Respondent was continually late. She would ask to come a little bit late, like an hour late, saying that she needs to get her hair and her eyebrows done. She would show up hours late. One time, she said at 2 p.m. when XY called her, while I'm on my way, then at 3 p.m. they couldn't get a hold of her. So that's why XY went home to her dad. Now, Gigi also testified that this was not uncommon, that they had seen their mother in these kind of unresponsive states before. Angie was actually taken away from, or actually, sorry, Ricky was taken away from her child's, or from her mother's custody as a child. And Gigi said that her and her sisters have tried several times to solve this drug problem, but that since their mother won't admit that she has a drug problem, it's really hard. Also, Nikki Greathouse was the child welfare specialist who testified that right before this dispositional hearing, Respondent was testing positive for hydrocodone, Xanax, and a muscle relaxer. And Respondent had reported to her, well, I only take things when absolutely needed. Now my pain's gone down, so I barely take it, usually only at night if I need some, but never altogether. Well, at 2 p.m. in the afternoon when she was tested, she tested positive for all three of these. So evidently, either that day was just a really bad day, or she was lying to her. Also, XY told Nikki Greathouse that she wanted to stay with her dad. Now Respondent did testify that she had a great relationship with XY. She provided excuses for being late. She explained that the drug reaction that she had, she calls it just a bad reaction, was the only bad reaction she had. Absolutely refused to admit that she had any kind of drug abuse problem. But this was completely contrary to the stipulated two facts that she stipulated to. So the trial court was perfectly reasonable in finding that her testimony was not credible. Now, as far as the fact that the trial court erred in getting custody of the father, well, the trial court likely would have been held to be in error if he hadn't given custody to the father. The father was found fit. You can't take away custody of a child without finding the parent unfit. So since the whole argument of Respondent on that part depends on her first argument, I don't see how that can succeed either. So for that reason, we respectfully request that the trial court's judgment be affirmed. Any questions? I don't believe so. Thank you, Counsel. Thank you. Counsel? The State brought up the issue of whether this is a moot or not. It is clear that this case is not moot. Respondent's mother respectfully asked for custody, and she asked to be held a fit and cared for by her child. Those issues are still in dispute. She's still requesting those. Second, Your Honor, a lot of the testimony that was brought out by the State here in their oral argument, the testimony they pointed out, a lot of that had to do with adjudication. It's clear that the Respondent's mother did have a prescription drug problem. However, the testimony again from her was that she had not had any additional problems for 10 months. She had a great relationship with the child. She was doing what the service plan told her to do in terms of her counseling. Therefore, the issue really is, was she fit and able on October 27, 2009, to care for the child? The record of the evidence suggests, yes, she was. And when the court instead found her unfit, it did not even consider it for the opportunity to really make a play. Did they find that she was unfit, or did they find that it was in the best interest of the child? I believe the issue was she was just – the circuit court determined that she was unable to care for the child. So then I think by then, since the court only had one fit and able parent in its view, the Respondent's father, they placed custody with the Respondent's father, Stephen P. But again, by October 27, 2009, she was able to care for the child. And based off the long-term relationship she had had with the minor child, it would have been in the minor child's best interest for the minor child to be placed in the custody of a Respondent's mother, Shirley Lai. If there are no more questions, I appreciate your time. Thank you. Thank you, Counsel. We appreciate the briefs and arguments of counsel.